IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHAWN N.[1],
an individual,

        Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

Case No. 3:18-cv-01848-MO

OPINION AND ORDER

MOSMAN, J.,

    Plaintiff challenges the Commissioner's decision denying his claim for disability insurance benefits [1]. I have jurisdiction under 42 U.S.C. § 405(g) to review the Administrative Law Judge's ("ALJ") decision. Because I conclude that the ALJ erred in discounting testimony regarding Plaintiff's mental health condition, I REVERSE the ALJ's decision and REMAND this case for an immediate award of benefits.

## PROCEDURAL BACKGROUND

    Plaintiff filed his application for Title II Disability Insurance Benefits on August 24, 2015, alleging a disability beginning on October 31, 2014. Tr. 182-83.[2] In his application,

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

[2] The administrative record is also available in electronic format. Tr. of Soc. Sec. Admin. R. [ECF 11-Attach. 1-13].

1 –OPINION AND ORDER

Plaintiff listed a series of mental and physical ailments, including depression, panic disorder, anxiety disorder, a fractured vertebra, and fibromyalgia. Tr. 183.

Plaintiff's application received an unfavorable initial review on December 1, 2015. Tr. 73. The Commissioner denied the application on reconsideration on March 8, 2016. Tr. 96. Plaintiff requested a hearing, which the ALJ held on August 22, 2017. Tr. 35, 131-32. The ALJ issued her opinion on November 16, 2017. Tr. 26. Plaintiff filed his complaint to review the ALJ's opinion on October 19, 2018. Compl. [ECF 1].

## THE ALJ'S FINDINGS

The ALJ made her decision based upon steps four and five of the five-step sequential evaluation process established by the Secretary of Health and Human Services. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920 (establishing the five-step evaluative process for SSI claims). Tr. 16-17.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 31, 2014, the alleged onset date of Plaintiff's disability. Tr. 17. At step two, she found that Plaintiff had the following severe impairments: history of vertebral fracture, fibromyalgia, anxiety disorder, and depression. *Id.* At step three, she found that none of these impairments meet one of the statutorily delineated impairments within the SSA, Tr. 18, but between steps three and four, she found that Plaintiff has the residual functional capacity to perform light work. Tr. 19. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 24 Finally, at step five, the ALJ found that some jobs exist in the national economy that Plaintiff could perform with his residual functional capacity, and that Plaintiff is therefore not disabled for purposes of the SSA. Tr. 25-26.

In reaching her conclusion on Plaintiff's residual functional capacity, the ALJ made a series of credibility findings that provide the grounds for this appeal. First, the ALJ found that Plaintiff's testimony was inconsistent with the medical evidence in the record. Tr. 20. As to Plaintiff's physical impairments, the ALJ based this conclusion on Plaintiff's statements about his activities of daily living. Tr. 21. As to Plaintiff's mental impairments, the ALJ addressed only Plaintiff's statements that stimulants are effective in treating his depression and anxiety. *Id.* Otherwise, she held that mental status exams showing Plaintiff did not have cognitive limitations were sufficient to contradict his mental health testimony. *Id.*

Second, the ALJ gave significant weight to the opinions of two state agency medical consultants: Dr. Lloyd Wiggins, who evaluated Plaintiff's physical medical evidence record, and Dr. Winifred Ju, who evaluated Plaintiff's mental health medical evidence record. Tr. 21-22. She also gave significant weight to the testimony of Dr. Tracy Gordy, a medical expert for the disability program. Tr. 22. The ALJ found that the doctors' analyses "comport[ed] with the overall medical evidence record." *Id.* She also determined from their testimony that Plaintiff "has no significant limitation in interacting with supervisors and coworkers." *Id.*

Third, the ALJ gave either partial or little weight to all other opinion evidence. This included opinions from family nurse practitioner Carol Paisley, who treated Plaintiff's mental health conditions; occupational therapist Trevor Tash, who diagnosed Plaintiff's lower back pain; and lay-person opinion evidence from Plaintiff's mother, father, sister-in-law, close friend, and former coworker.[3] Tr. 22-24. The ALJ discounted all of the lay-person opinion testimony

---

[3] Plaintiff's sister-in-law and friend also gave testimony in their capacities as Plaintiff's former coworkers. Tr. 24.

because it was "not consistent with the medical evidence record showing that the claimant does not have cognitive deficits and . . . is consistently cooperative and often pleasant." Tr. 24.[4]

## STANDARD OF REVIEW

I review the ALJ's decision to ensure the ALJ applied proper legal standards and that the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (explaining that the ALJ's decision must be supported by substantial evidence and not based on legal error). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A judge must uphold the Commissioner's decision if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882.

## DISCUSSION

On appeal, Plaintiff makes three arguments regarding the merits of the ALJ's opinion: (1) the ALJ improperly discounted Plaintiff's symptom testimony; (2) the ALJ improperly discounted the opinion testimony from occupational therapist Trevor Tash; and (3) the ALJ improperly discounted third-party lay person opinion testimony. Pl.'s Br. [ECF 12] at 5-12. Finally, Plaintiff contends that in light of these alleged errors, this case should be remanded for an award of benefits.

---

[4] The ALJ also discounted the opinion of an investigator from the Salem Cooperative Disability Investigations Unit ("CDIU") because the CDIU officer did not testify, but that credibility finding is not relevant to this appeal or opinion. Tr. 23-24.

Plaintiff's alleged disability consists of two categories of symptoms: mental health symptoms and physical symptoms. The arguments in Plaintiff's complaint relate to different categories of ailments—the disputed testimony from Plaintiff and Tash relates to Plaintiff's physical symptoms, and the disputed lay-person testimony relates to Plaintiff's mental health symptoms. Because, as discussed below, I find that the ALJ committed reversible error in how she evaluated the testimony related to Plaintiff's mental-health symptoms at every level of her analysis, I begin by addressing Plaintiff's arguments related to the lay-person testimony.

## I. Lay Witness Testimony

An ALJ considers testimony from lay witnesses in order to evaluate the severity of the individual's impairment and his ability to function. S.S.R. 06-03p. Lay witness testimony is competent testimony that an ALJ must consider. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (citing *Sprague v. Bowen*, 812 F.3d 1226, 1232 (9th Cir. 1987)). An ALJ may only discount lay witness testimony by providing reasons that are germane to each witness. *Dodrill*, 12 F.3d at 919. One germane reason for which an ALJ may discount lay testimony is that it conflicts with the medical evidence in the record. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *but see Bruce v. Astrue*, 557 F.3d 1113, 1115-16 (9th Cir. 2009) (ALJ may not reject otherwise-credible lay person testimony merely because it was not corroborated by the medical record).

Here, the ALJ received testimony from five people with close relationships to Plaintiff, including family members, friends, and former coworkers. Tr. 24. She discounted all of their testimony because it was "not consistent with the medical evidence record showing that the claimant does not have cognitive deficits and that the claimant is consistently cooperative and often pleasant." *Id.* Plaintiff argues that this reason was not legally sufficient to discount these

witnesses' testimony because the testimony was not actually inconsistent with a lack of cognitive deficits. Pl.'s Br. [12] at 13. For its part, the Commissioner relies on *Greger v. Barnhart* in support of the proposition that an ALJ may discount the testimony of a family member if it "specifically conflicts" with the medical record. 464 F.3d 968 (9th Cir. 2006); Def.'s Br. [14] at 12.

The Commissioner is correct insofar as he has provided an accurate statement of the law. An ALJ may indeed discount lay witness testimony that specifically conflicts with the medical record. But that is not what happened in this case. Here, the lay person testimony does not conflict with the parts of the medical record that the ALJ and the Commissioner refer to. The ALJ's conclusion refers only to narrow pieces of the lay witness testimony, and it contrasts that testimony with largely irrelevant portions of the medical record.

The lay witnesses testified that Plaintiff has a panic and anxiety disorder that prevents him from being able to be around groups of people, participate in any routine social activities, cope with stress, leave the house for more than 10 minutes per day, drive in traffic, go grocery shopping, visit unfamiliar locations, cope with changes to routine, engage in previously enjoyed hobbies and activities, control his anger, listen to a ringing phone, deal with customers and coworkers, or adhere to a consistent work schedule without calling in sick. Tr. 268-75, 311-17. The only testimony related to cognitive function—memory, concentration, etc.—came from Plaintiff's mother in response to prompted questions on the function report she provided. Tr. 273.

None of this testimony is inconsistent with the fact that Plaintiff's mental status exams did not show any cognitive deficits. This testimony describes a mental health disorder, not a cognitive deficiency or problem. None of these witnesses meant to describe problems with

Plaintiff's memory, concentration, focus, or any other cognitive characteristic. Further, the fact that Plaintiff appeared "cooperative and often pleasant" at visits with his counselor do not contradict the testimony from lay witnesses that Plaintiff's panic attacks resulted in him either breaking down crying or exploding with rage. Presumably, Plaintiff was not experiencing panic attacks during his counseling visits. And a person with panic disorder may sometimes be pleasant or cooperative. The testimony from the lay witnesses does not contradict either part of the medical record that the ALJ referenced.

What's more, the medical record actually supports the lay witness testimony, as does Plaintiff's own testimony describing his symptoms. The same chart notes that list Plaintiff as being "cooperative" also chronicle his mental health problems. The notes report Plaintiff having panic attacks, sleep disruptions, depression, a lack of social connections, interpersonal conflict, agoraphobia, and other problems consistent with the problems the lay witnesses described. Tr. 514-612. These mental health records show a consistent, ongoing pattern of mental health problems that adhere closely to the testimony the lay witnesses gave.

Plaintiff's testimony was also consistent with the lay person testimony at issue. Plaintiff testified that he only leaves his house three times per week, and those trips are to a store "a couple of blocks away." Tr. 44-45. He testified that he has severe panic attacks, anxiety, and depression. Tr. 46. He testified that it requires 30-45 minutes to "refocus" after a panic attack, which is not conducive to a work environment. *Id.* He has panic attacks three to four times per week, which last between 15 minutes and an hour. Tr. 52. He described the attacks as feeling like "I'm either going to die, or have a heart attack, or going to vomit all over the store . . . ." Tr. 53. Like the medical records, this testimony corroborates the testimony from the lay witnesses.

In her evaluation of the lay witness testimony, then, the ALJ discounted both the Plaintiff's testimony and the medical record. In fact, she did not consider them at all. Although Plaintiff does not specifically make this argument in his brief, it necessarily follows from an analysis of the ALJ's findings regarding the lay witnesses. And it amounts to legal error because the ALJ was required to consider testimony from both Plaintiff and the medical record.

An ALJ must consider both a claimant's testimony about his symptoms and "all of the available evidence from [his] medical sources . . . ." 20 C.F.R. § 404.1529(a), (c)(1); § 416.929(a). An ALJ must provide specific, clear, and convincing reasons to reject a claimant's symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1280 (9th Cr. 1996). And she must provide specific, legitimate reasons for rejecting medical testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). It is legal error to reject medical testimony "while doing nothing more than ignoring it . . . ." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).

Here, the ALJ provided no reasons for rejecting Plaintiff's testimony about the symptoms of his anxiety and panic disorder, nor did she provide any reasons for ignoring the medical records that documented Plaintiff's panic attacks. It was therefore legal error for the ALJ to reject both sets of testimony without explanation. And because this testimony corroborates the lay witness testimony that the ALJ also discounted, I hold that it was error for the ALJ to discount the lay witness testimony as "inconsistent" with the medical record, as it was actually supported by the medical record.[5]

---

[5] Notably, the ALJ also discounted the testimony from Carol Paisley, FNP, who treated Plaintiff for his mental health problems. While not considered an acceptable medical source, Ms. Paisley was Plaintiff's treating provider. She had met with Plaintiff ten times, described his mental health symptoms in detail, and offered an opinion that Plaintiff's mental health condition rendered it unreasonable to expect Plaintiff to work. Tr. 22-23. The ALJ discounted this testimony from a treating medical source because she found that ten visits were not sufficient to develop a "detailed and nuanced impression" of Plaintiff and because her testimony was

8 –OPINION AND ORDER

To constitute reversible error, the ALJ's error must be harmful. *Cf. Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("The decision of the ALJ will not be reversed for errors that are harmless.") (citations omitted). I find that this error—improperly discounting lay person testimony and relevant, related evidence in the record—was harmful because it was consequential to the non-disability decision. *Id.* at 1056. An error in discounting witness testimony is harmful if the error impacted the validity of the ALJ's decision—*i.e.* whether the decision would be supported by substantial evidence without the error. *Carmickle v. Comm'r. Soc. Security Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Here, the probative value of the evidence provided by the lay witnesses, as well as the improperly rejected evidence from the medical record and from Plaintiff, was significant. It changes the calculus as to what occurred below. If the evidence of Plaintiff's panic attacks, agoraphobia, and significant social difficulties had been considered, the ALJ's opinion that Plaintiff was not disabled would not be supported by substantial evidence because supports a finding that Plaintiff has a disability rooted in his mental health problems, and the ALJ did not identify any valid reason to reject it. The ALJ's erroneous rejection of the evidence related to Plaintiff's mental health symptoms is sufficient grounds for reversal, but I turn next to Plaintiff's additional arguments.

---

"contradicted" by the cognitive exams. Tr. 23. As discussed above, the latter is not a contradiction and is not a legally sufficient reason to reject a medical opinion. Further, ten visits in 18 months amounts to approximately one visit every six weeks—a treatment schedule that would surely allow a nurse practitioner to know her patient. It was arguably legal error to discount Ms. Paisley's testimony for these reasons, but I do not offer a holding because plaintiff did not raise it.

## II. Plaintiff's symptom testimony

The ALJ found that the Plaintiff's testimony about the intensity, persistence, and limiting effects of his physical symptoms was not consistent with the medical record. Tr. 20. Plaintiff argues that this finding was error in three specific ways. First, he claims that the ALJ erred by finding that Lyrica controlled the fibromyalgia pain that Plaintiff experienced. Second, he argues that the ALJ erred by discounting Plaintiff's testimony about his fibromyalgia because his tests did not show any "acute abnormalities." Finally, he argues that the ALJ incorrectly evaluated Plaintiff's testimony about his activities of daily living.

As explained above, an ALJ must provide clear and convincing reasons to discount a claimant's symptom testimony. Valid reasons to reject Plaintiff testimony include prior inconsistent statements, evidence of effective treatment, and allegations that are inconsistent with activities of daily living. *See, e.g., Ghanim v. Colvin*, 763 F.3d, 1154, 1163 (9th Cir. 2014) (inconsistent statements); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (effective treatment); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities of daily living).

Here, two of the ALJ's reasons for rejecting Plaintiff's testimony were valid. First, the ALJ properly discounted Plaintiff's testimony on the basis that "his physical examination showed no acute abnormalities." Tr. 20. As the Commissioner argues, the ALJ appeared to be referring to the normal results of Plaintiff's physical examination—his full range of motion, normal grip strength, and normal gait. Def.'s Br. [14] at 9; Tr. 20. While fibromyalgia is diagnosed entirely on the basis of the patient's reports and other symptoms, *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004), the ALJ did not discount Plaintiff's diagnosis. Rather, she inferred from his physical examinations that the pain from his condition was not debilitating. This was not legal error.

10 –OPINION AND ORDER

Second, it was not error for the ALJ to conclude that Plaintiff's activities of daily living were inconsistent with his symptom testimony, at least to the extent those activities undermine his testimony regarding physical limitations. The ALJ may have overstated the "robust" quality of some of these activities—for example, leaving the house once a day for 10 minutes to buy a soda does not translate to an inference that Plaintiff can work an eight-hour day. But these activities, taken together, do suggest that Plaintiff has a fair amount of mobility and the ability to overcome at least some of his physical pain symptoms.

Conversely, the ALJ misunderstood the testimony regarding Plaintiff's fibromyalgia treatment. She was correct that Plaintiff told his doctor in January 2016 that Lyrica was largely effective for treating his fibromyalgia pain. Tr. 478. But in August 2017, Plaintiff testified that while Lyrica initially helped with his pain, its effectiveness had diminished and "it just doesn't work anymore." Tr. 48. These statements are not inconsistent, nor do they show that Lyrica was an effective treatment for Plaintiff's fibromyalgia. What the statements do show is that a medication that once worked for Plaintiff ceased to be effective over the course of time. This is not a valid reason to discount plaintiff's testimony.

In sum, the ALJ erred by discounting Plaintiff's testimony regarding the treatment of his fibromyalgia, but she did not err by discounting his testimony regarding the effects of his fibromyalgia or by giving weight to Plaintiff's activities of daily living.

### III. Trevor Tash, Occupational Therapist

Plaintiff argues that the ALJ improperly discounted the opinion of occupational therapist Trevor Tash. Pl.'s Br. [12] at 9-12. The ALJ gave "little weight" to Tash's assessment of Plaintiff's "postural limitations"—i.e. how long he could sit, stand, or walk. Tr. 23. Tash observed Plaintiff for three hours and estimated that he could sit, stand, or walk for 1.5 hours

during an eight-hour workday. *Id.* The ALJ reasoned that three hours was not sufficient to support his assessment of plaintiff. *Id.* Plaintiff argues that this was error because Tash was the only witness who had the opportunity to personally observe Plaintiff and that this fact should garner more weight for Tash's opinion. Pl.'s Br. [12] at 10-12.

An occupational therapist is not an "acceptable" medical source (SSR 06-03p), and the ALJ must therefore provide only a germane reason to discount his testimony. *Popa v. Berryhill*, 872 F.3d 901 (9th Cir. 2017). Factors in evaluating testimony from an unacceptable medical source include the length of relationship and frequency of contact between the provider and the claimant; the consistency of the witness's opinion with other evidence; the quality of the witness's explanation for his opinion; any specialty or expertise related to the impairment; and any other factors tending to support or refute the opinion. SSR 06-03p at *3.

In this case, as the Commissioner notes in his brief, Tash himself qualified his opinion by noting that "[t]he brevity of the evaluation prohibited prolonged testing of postural endurance (sit/stand/walk)." Tr. 617; Def.'s Br. [14] at 6. The ALJ's reason for discounting Tash's opinion matches his own reason for qualifying it. Given that Tash is not an "acceptable" medical source, this was a sufficient reason to discount his testimony as to Plaintiff's postural limitations. The ALJ did not err.

## VI. Credit-as-true Doctrine

As described above, I hold that the ALJ made the following legal errors: (1) improperly discounting lay witness testimony regarding Plaintiff's mental health symptoms, (2) ignoring testimony from Plaintiff and evidence in the medical record that described Plaintiff's mental health symptoms, and (3) improperly discounting Plaintiff's testimony describing the efficacy of his treatment for fibromyalgia. Additionally, I hold that these errors were not harmless because

they affected the determination of benefits, at least as they relate to Plaintiff's mental health symptoms, and the ALJ's opinion. The final step, therefore, is to determine whether to remand this case for further proceedings or for the immediate award of benefits.

Under the "credit-as-true" doctrine, I apply a two-step analysis. First, I must decide whether "the record as a whole" is fully developed, is free from conflicts and ambiguities, and that all essential factual issues have been resolved. *Dominquez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). In conducting this review, I must consider whether there are inconsistencies between Plaintiff's testimony and the medical record or whether the government has pointed to evidence that the ALJ overlooked. *Id.* Second, if I determine the record is fully developed, I must consider whether the ALJ would be required to find the claimed disabled on remand "if the improperly discredited evidenced were credited as true." *Id.* If so, the case will be remanded for the immediate award of benefits.

Here, I find that the record is fully developed. It contains medical evidence relating to each of Plaintiff's alleged conditions, testimony from all relevant witnesses, and Plaintiff's testimony does not conflict with the evidence in the record. The fact that Plaintiff and the reviewing state agency physicians reached different conclusions as to whether Plaintiff is disabled does not constitute an evidentiary conflict. Rather, it indicates a difference of interpretation. Further, neither the Commissioner nor Plaintiff has pointed to any evidence that needs to be further developed or added to the record.

In light of the fully developed record, I must determine whether Plaintiff would be found "disabled" if the improperly discounted evidence were credited as true. This requires me to credit as true the following: that Plaintiff suffered recurrent, severe panic attacks that reduced him to either tears or rage; that his anxiety and panic disorder prevented him from leaving the house

13 –OPINION AND ORDER

more than 10 minutes per day, aside from doctor's visits; that his disorder interfered with past attempts at working; that his disorder prevents him from performing basic activities such as driving on a freeway and going to the grocery store; and that his fibromyalgia pain is not controlled with medication. None of this evidence conflicts with findings that he can perform light physical work or that he has no cognitive deficits. It does, however, suggest that Plaintiff is subject to mental health limitations that would make it virtually impossible to work a full-time job and to engage in the frequent social interaction that would require. And this must be considered in addition to the significant physical limitations the ALJ has already identified. This evidence leads me to find that the ALJ would be required to find that Plaintiff is disabled if this case were remanded. I therefore hold that an immediate award of benefits is proper.

## CONCLUSION

For the reasons stated above, I find that the ALJ's decision was not supported by substantial evidence. Accordingly, I REVERSE the decision and REMAND the case for an immediate award of benefits.

IT IS SO ORDERED.

DATED this 13 day of November, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge